# LAW OFFICE OF BRIAN L. GREBEN

| | |
|---|---|
| **316 Great Neck Road** | **Office:    (516) 304-5357** |
| **Great Neck, NY 11021** | **Fax:       (516) 726-8425** |
| www.grebenlegal.com | brian@grebenlegal.com |

November 14, 2024

**Via ECF**
Judge Nusrat J. Choudhury
United States District Court
Eastern District of New York
100 Federal Plaza, Courtroom 1040
Central Islip, NY  11722

     Re: *Goran Jokic and Jeton Shoshi v. Atlantikos LTD. (d/b/a Atlantik-os) and Kim Papas.*
       Case No.:  23 cv 3567 (NJC)(ARL)

Dear Judge Choudhury:

  This joint letter is submitted on behalf of plaintiff and defendants in the above action. The parties jointly respectfully request that Your Honor approve the parties' proposed Settlement Agreement resolving plaintiff Jeton Shoshi's claims in this action, including, without limitation, those arising under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), attached as Exhibit "1," and dismiss Mr. Shoshi's claims with prejudice pursuant to the Stipulation attached as Exhibit "2."  *Cheeks v. Freeport Pancake House*, *Inc*., 796 F.3d 199, 203 (2d Cir. 2015) *citing Lynn's Food Stores, Inc. v. United States Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982).[1]

  This settlement pertains only to the claims of plaintiff Jeton Shoshi.  The claim of plaintiff Goran Jokic have not been settled, and litigation between Mr. Jokic and defendants will continue.

**I**.  **Background: Wage Claims, Alleged Liability and Defenses**

  Defendant Atlantikos LTD. (d/b/a Atlantik-os) ("Atlantikos") is a restaurant with a principal place of business at Royal Atlantic Hotel, 126 S. Emerson Avenue, Montauk, New York; defendant Kim Papas is Atlantikos' owner and manager.  As stated in the Complaint (ECF Doc. No. 1), defendants hired Mr. Shoshi in the spring of 2014, and he worked for defendants from May through September of that year as well as 2015-2017, 2020, and 2022.  Mr. Shoshi was primarily employed as a bartender, but his work involved most aspects of Atlantikos' operations, and his job duties included, but were not limited to, construction, waiting tables, cleaning the dining room, cleaning the kitchen, cooking, ordering supplies, promotion and

---

[1] Defendants take no position with respect to Section IV (attorneys' fees), except to state that all parties believe the settlement is a fair and reasonable resolution of disputed issues.

Judge Nusrat J. Choudhury
November 14, 2024
-2-

marketing, and anything else that the restaurant needed. Mr. Shoshi only worked for Atlantikos during its summer seasons, when he spent seven (7) days per week on the job at the restaurant.

Defendants paid Mr. Shoshi at a "tip credit" rate – i.e., they paid him less than minimum wage because he theoretically collected more than enough tips to offset the credit. Mr. Shoshi alleges, however, that defendants were not lawfully entitled to pay a tip credit rate because, *inter alia*, defendants kept a portion of his tips for themselves and allowed other employees who were not part of the wait staff to collect from the tip pool. As noted in Mr. Shoshi's damage estimate, annexed hereto as Exhibit "3," he alleged compensatory damages in the amount of $39,374.35, liquidated damages in an equal amount, and statutory fines in the amount of $10,000.00.

Defendants deny plaintiff's allegations. Specifically, they deny that they unlawfully kept any of his tips or allowed non-waitstaff to receive part of the tip pool, and dispute the number of hours he claims to have worked.

## II.   Mediation and Settlement

The parties participated in court-sanctioned[2] mediation before mediator Joseph DiBenedetto on September 9, 2024. During the mediation session, the parties discussed the strengths and weaknesses of their cases. This included, *inter alia*, the difficulties Mr. Shoshi will have in establishing that defendants improperly distributed tips or that he worked the long hours described in the Complaint and his damage estimate.

Although the mediation session ended without a settlement with respect to Mr. Jokic's claims, the parties reached an agreement to settle Mr. Shoshi's claims in their entirety for $25,000.00, reflecting a compromise on the disputed issues outlined above (and is based on a figure sanctioned by Mediator DiBenedetto). The parties respectfully request that Your Honor approve the settlement and dismiss Mr. Shoshi's claims in this action in their entirety (while allowing Mr. Jokic's claims to continue).

## III.   The Proposed Settlement Should be Approved

A court may approve a settlement of FLSA claims where it "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. Sita Information Networking Computing USA, Inc.*, No. 07 Civ. 0086, 2008 U.S. Dist. LEXIS 46174, at *2 (E.D.N.Y. June 12, 2008) (*quoting Lynn's Food Stores, Inc. v. United States*, 679 F.2d at 1354). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Beckman v. KevBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) (Ellis, M.J.), *citing Lynn's Food*, 679 F.2d at 1353-54. "Generally there is a strong presumption in favor of finding a settlement fair, [because] the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliauichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (Gorenstein M.J.) (internal quotation marks omitted).

---

[2] *See* Judge Lindsay's Order of April 9, 2024.

Judge Nusrat J. Choudhury
November 14, 2024
-3-

The parties agree that many *bona fide* disputes exist regarding, *inter alia*, (1) defendants' defenses that they were entitled to utilize a "tip credit"; and (2) the amount of any potential regular and overtime wages based on the parties' dispute concerning hours allegedly worked. Plaintiff Jeton Shoshi recognizes that it will be difficult to establish damages for the period at issue, because he lacks documents indicating that plaintiff worked for a substantially longer period than defendants alleges, or that tips were improperly distributed. If the matter proceeds to trial, there is a realistic chance that Jeton Shoshi will be awarded less than the amount of the current settlement, or even nothing at all.

These facts, coupled with the relatively swift payout to plaintiff (as opposed to a speculative payment after years of litigation in the District Court), weigh in favor of settlement. Litigating damages can be and would be a fact-intensive process demanding in-depth and costly efforts by both parties. Without this settlement, Jeton Shoshi and defendants would need to spend significant amounts of time, money and expense for depositions and trial. Furthermore, there is no guarantee of success on either side. Given the uncertainty over the potential outcome, both parties were motivated to settle this dispute.

Considering the numerous risks in this case, including the risk of taking nothing, plaintiff and his counsel believe that this settlement is a good result for plaintiff, and it should be approved as fair. *See Meigel v. Flowers of the World, NYC, Inc.*, 2012 U.S. Dist. LEXIS 2359, at *2-3 (S.D.N.Y. Jan. 9, 2012) ("If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement."). This settlement constitutes a classic compromise of contested issues, reached based on arm's length negotiations between experienced FLSA/NYLL counsel. The terms of the Settlement Agreement are in accordance with *Cheeks*' admonitions relating to non-economic terms.

### IV.     The Attorneys' Fees Are Fair and Reasonable

Part of the settlement payment includes plaintiff's attorneys' fees in the amount of $8,123.94, which equals one-third of the settlement payment after expenses. Fees of one-third of the settlement are routinely approved in FLSA actions, and the parties agree that such fees and costs are fair and reasonable. Contingency fees of one-third in FLSA cases are routinely approved in this Circuit. *Santos v. EL Tepeyac Butcher Shop Inc.*, 15-CV-814, 2015 WL 9077172 at *3 (S.D.N.Y. Dec. 15, 2015). This one-third contingency - agreed upon by plaintiff in his retainer agreement and less than plaintiff's Counsel's lodestar relating to the FLSA/NYLL claims, as discussed below - is regularly approved in this circuit in similar cases. *See Chandler v. Total Relocation Services, LLC,* 15 Civ. 6791 (HBP), 2017 WL 3311229, at *4 (S.D.N.Y. Aug. 2, 2017)("Contingency fees of one-third in FLSA cases are routinely approved in this circuit."); *see also Najera v. Royal Bedding Co., LLC*, No. 13-CV-1767 (NGG) (MDG), 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) ("one-third contingency fees [] are commonly accepted in the Second Circuit in FLSA cases."); *Kochilas v. Nat'l Merch. Servs., Inc.*, No. 1:14-CV-00311 (LB), 2015 WL 5821631 (E.D.N.Y. Oct. 2, 2015) (awarding 33% of $60,000 in FLSA case, and stating that the "percentage-of-recovery method . . . is consistent with the trend in this Circuit."); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 13 CV 3234 (LB), 2013 WL 5308277, at *1 (E.D.N.Y., Sept. 19, 2013) ("This fee arrangement [of one third of the settlement amount plus costs] is routinely approved by courts in this Circuit.").

Judge Nusrat J. Choudhury
November 14, 2024
-4-

Following *Goldberger v. Integrated Resources, Inc.*, 209 F. 3d 43 (2d Cir. 2000), the trend in the Second Circuit has been to apply the percentage method and to loosely use the lodestar method as a "cross check." *Id*. at 50. In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Id*. Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case . . . ." *Id*.

Plaintiff's counsel's lodestar documents are attached hereto as Exhibit "4." As noted therein, plaintiff's counsel worked at least 32 hours on this matter. At plaintiff's counsel's usual hourly rate of $400.00 per hour, plaintiff's attorneys' fees amount to $12,800.00 – substantially more than the $8,123.94, plus expenses of $627.86 (representing 50% of the combined litigation expenses of both plaintiffs) that plaintiff's counsel will receive as a result of this settlement.

Plaintiff's counsel has been practicing law for nearly thirty (30) years. I have specialized in employment law, including FLSA/NYLL cases, since I opened my current practice in 2013. Since 2014, I have represented numerous plaintiffs in FLSA/NYLL cases such as this one, and have settled several FLSA/NYLL cases pending in the S.D.N.Y. and E.D.N.Y. My regular rate for representing plaintiffs in all of these FLSA/NYLL cases was $400 per hour. This hourly rate is commensurate, and probably less than, what attorneys in Great Neck, New York typically charge.

**V.      Conclusion**

The parties reached a fair and reasonable settlement of all claims after exchange of discovery and corresponding settlement negotiations. The parties respectfully request that Your Honor approve the attached settlement and dismiss this action.

Very truly yours,

/s/ Brian L. Greben

Brian L. Greben